## No. 6430.

## SUCCESSION OF C. E. MARC.

The surviving widow, although a former concubine, and only married a few days before her husbands's death, is entitled to all the rights enjoyed by any other widow. under the homestead law.

The widow's claim under the homestead act ranks all privileges, except that of the vendor.

If the proceeds of the movables and unmortgaged property of a succession do not suffice to pay off its privileged debts, those debts must be first referred for payment to the proceeds of its property incumbered by the *youngest* mortgage.

The vendor's privilege is only operative as to third persons, from the moment of its registry.

The vendor's privilege will not take rank over a mortgage recorded before its own registry, unless its own registry was made on the day of the sale.

APPEAL from the Second District Court, parish of Orleans. *Tissot,* J.

*A. J. Villeré* and *M. B. Dubuisson,* for executor and appellee.

*J. Meunier* and *Ed. Bermudez,* for opponents.

The opinion of the court was delivered by

MANNING, C. J.   The sole contest in this case is between the creditors of the deceased, each of whom has a mortgage.

Soye, the older creditor, obtained executory process, under which the property specially mortgaged to him was sold, and it did not realize sufficient to pay his claim, after the costs of his process and the taxes were satisfied.

Gayarré's mortgage was on another property, and was subsequent in date to Soye's, and he had also the vendor's privilege upon it, retained in the same act which recited the mortgage. The sale of that piece of property was likewise insufficient to pay the costs, taxes, and his debt. The executrix has charged the general and special privileges, viz.: the

funeral charges, and those of the last illness, and of law, and the widow's portion of one thousand dollars, to the fund derived from the sale of the two mortgaged properties indifferently, and they consume the whole of both.

Opponents deny that the widow is entitled to the gratuity of one thousand dollars under the act of 1852, because she was the concubine of the decedent until within twelve days of his decease, when their marriage took place, while he was in the presence of death, and without issue born of their previous concubinage.

The act of 1852 gives to the widow who is in necessitous circumstances the sum already mentioned, without qualifying her right to receive it by the condition that her previous life should have been blameless, or by limiting its operation to those whose married life should have lasted a specified time. Revised Statutes of 1870, section 1693. It is argued by' one of the opponents that an interpretation of the statute which permits the widow of Marc to partake the beneficence provided by it, would be offensive to our moral sense, and that it could not have been in the contemplation of the Legislature to place a woman, who has thus disregarded religious and social duty, upon the same plane with the respectable and bereaved widow, whose condition attracted the regard and provoked the compassion of the law-maker.

It is very certain, however, that the law has not attached qualifications, nor imposed conditions upon the recipients of this legislative bounty, such as we are asked to supply and enforce in the present proceeding. Should we attempt to do so, omitting any mention of our want of authority, we must arrange this description of persons into classes, separated from each other by the purity or impurity of their ante-nuptial lives, or by the longer or shorter duration ot the marriage which preceded the widowhood.

There are conditions, however, imposed by the statute which the claimant of this bounty must fulfill. The widow must be in necessitous circumstances, and the present claimant is indisputably in that condition. The sum to be received from the succession of her deceased husband must be such, as added to the amount of property owned by her, will make one thousand dollars. She had no property, but the rents of the mortgaged property occupied by her since her husband's decease are $325, and are deductible from her portion under the act. Succession of Drum, 26 Annual, 539. The residue is to be paid in preference to all other debts, except those for the vendor's privilege, and expenses incurred in selling the property, but the widow is entitled to the usufruct only of the sum specified in the act if there be children.

The opponent, Gayarré, had a vendor's privilege on the property sold. under his mortgage, and claims its exemption from the widow's allow-

ance, which is opposed by Soye for an alleged want of seasonable registry of the privilege. The copy of the act of mortgage contains also the retention of the vendor's privilege, and it was recorded in the mortgage office on the fourth of April, 1874, a few days after its execution. It is not pretended that any other mortgage exists, or existed on that property, and the objection of want of registry is therefore untenable as between these creditors.

Two rules relating to the rank of privileges and to the fund out of which they are payable, are well established. One is, that when the movables and unmortgaged property are insufficient to pay the privileges, they must be paid out of the fund arising from the sale of the property covered by the youngest mortgage, and, that being insufficient, the residue must come out of that next in age. Devron's case, 11 Annual, 482; Succession of Cerise, 24 Annual, 96; Succession of Rousseau, 23 Annual, 1.

The other is, that the destitute widow's portion primes all privileges created previous to the death of the party, except that of the vendor, but that it yields to funeral expenses, expenses of last illness, and law charges growing out of the administration and settlement of the succession. Foulkes's Succession, 12 Annual, 537; Quertier vs. Hille, 21 Annual, 429.

Applying these rules to the case at bar, the widow of Marc, whose portion is reduced to six hundred and seventy-five dollars by her previous receipts from the succession, must be paid that residue out of the Soye-mortgage fund, and the general privileges, which are not satisfied by the sale of the movables, must be paid by the Gayarré mortgage as the least ancient.

The taxes and costs of sale of the Soye-mortgaged property are nearly one half of the sum at which it was adjudicated, and the residue is insufficient to pay the widow's portion, but the unpaid part of that residue can not be charged against the property affected by the vendor's privilege.

The taxes and costs of sale of the Gayarré-mortgaged property are more than half of the sum realized by its sale, and that residue must bear the burthen of such part of the general privileges as are not satisfied by the sum derived from the sale of the movables.

Where the husband dies without descendants, as in this case, the necessitous widow is not required to give security. She does not take the usufruct only of the sum secured to her, but its full ownership. Succession of Hunter, 13 Annual, 257; Yarborough's Succession, *idem* 378.

The reductions and alterations made by the lower court in the tableau are approved, and the funds must be distributed as directed by that court, except where amended or reversed by this decree, and it is ac-

cordingly so ordered, the costs of appeal to be paid by the two opponents and appellants in equal parts.

———————

## On Rehearing.

The opinion of the court was delivered by

Manning, C. J. A rehearing of this cause has been granted on the application of the opponent, Charles Gayarré. The grounds urged by him for error are, that we subjected the fund, derived from the sale of the property upon which his vendor's privilege rested, to the payment of the general privileges, when these latter should have been charged to the Soye fund.

Upon a review of our opinion and decree, we find there was error in holding that his privilege existed, or could be enforced. A material alteration has been effected in the law applicable to this question by a radical change of two articles of the Civil Code.

Article 3240 formerly read as follows: "The privileges enumerated in the two preceding articles are valid against third persons from the date of the act, if it has been duly recorded, that is to say, within six days of the date," etc. It is numbered 3273 in the revisal, and reads: "Privileges are valid against third persons from the date of the recording of the act or evidence of indebtedness as provided by law."

Article 3241 formerly read thus: "When the act on which the privilege is founded has not been recorded within the time required in the preceding article, it shall have no effect as a privilege, that is to say, it shall confer no preference on the creditor who holds it, over creditors who have acquired a mortgage in the mean time, which they have recorded before it; it shall, however, still avail as a mortgage, and be good against third persons from the time of its being recorded."

That article is numbered 3274 in the revisal, and reads: "No privilege shall have effect against third persons unless recorded in the manner required by law in the parish where the property to be affected is situated. It shall confer no preference on the creditor who holds it over creditors who have acquired a mortgage, unless the act or other evidence of the debt is recorded on the day that the contract was made."

The privilege mentioned in article 3238 (new number 3271), is one of those referred to: "The vendor of an immovable only preserves his privilege on the object when he has caused to be duly recorded at the office for recording mortgages, his act of sale in the manner directed hereafter, whatever may be the amount due him on the sale."

Formerly, and under the Code of 1825, the vendor of an immovable preserved his privilege if he had the act evidencing it recorded within six days of its date. Now, by the alteration, or rather substitution of a

new article, that privilege is preserved against third persons only from the date when the act is recorded. As against mortgages recorded anterior to the registry of the privilege, this latter has effect as such only when recorded on the day of the date of the contract creating it.

The application of these new articles of the Code to the present case sensibly affects the opponent, who claims exemption from contribution to the general succession privileges by reason of his holding a privilege superior to them. We are compelled to hold that he has no privilege whatever, as against third persons, since the act which conferred upon him, or preserved, the vendor's privilege, was not recorded upon the day the sale was made. And this is what was meant by the counsel of Soye when the loss of the privilege was attributed to want of *seasonable* registry.

The act of privilege not having been recorded on the day of its execution, the privilege itself was lost as to third persons, and Soye is a third person in this proceeding where the subjection of the two funds to the payment of the succession privileges turns upon the question of privilege *vel non*. Gayarré's mortgage was not lost. It was good from the day it was recorded, but it was junior to Soye's, and a senior mortgage can not be required to contribute to the payment of privileges of a succession until the junior mortgages are exhausted. Therefore

It is ordered, adjudged, and decreed that so much of our former decree as subjected the Soye-mortgage fund to the payment of the unpaid residue of the widow's portion, is set aside, and that after the sum derived from the sale of the movables is exhausted, the residue of the succession privileges be first charged against the junior mortgage fund of Charles Gayarré, and not until that is exhausted, can any portion of these privileges be charged against the more ancient mortgage fund of Soye, the costs of this appeal to be paid by the opponent, Gayarré.